1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MARK ANTHONY BROWN,                     Case No.  2:20-CV-00885-KJM-DMC (PC)

12              Plaintiff,

13         v.                                 FINDINGS AND RECOMMENDATIONS

14    P. LELIS, et al.,

15              Defendants.

16

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court is Defendants' motion for summary judgment, ECF

19    No. 23, Plaintiff's opposition, ECF No. 26, and Defendants' reply, ECF No. 27.  Plaintiff alleges

20    conditions of confinement claims against Defendants Lelis and Tercero in violation of his Eighth

21    Amendment rights.  ECF No. 1.  Defendants move for summary judgment, arguing that Plaintiff

22    did not exhausted his administrative remedies before commencing this action.  ECF No. 23.  The

23    undersigned agrees that Plaintiff failed to exhaust his administrative remedies and thus

24    recommends granting Defendants' motion for summary judgment.

25    / / /

26    / / /

27    / / /

28    / / /

                                                   1

1

# I. BACKGROUND

2

Plaintiff commenced this civil rights action on April 30, 2020 against correctional

3 officers Defendants Tercero and Lelis.  ECF No. 1.  He alleges that on March 5 and 6, 2020, he

4 informed Defendant Tercero that his toilet was not working and that a nearby maintenance closet

5 leaked, causing his cell to flood.  Id. at 5.  He asked Defendant Tercero for cleaning supplies and

6 to be relocated to a different cell, but Defendant Tercero denied those requests.  Id. at 5-6.  Then,

7 on March 8 and 9, 2020, Plaintiff notified Defendant Lelis that his toilet had accumulated feces

8 and urine for days and that there was a leak causing water to collect on the floor of his cell.  Id. at

9 6.  Plaintiff claims that Defendant Lelis took no action to remedy the situation.  Id.  Plaintiff

10 maintains that on March 9, 2020 and April 4, 2020, he slipped on the water in his cell and injured

11 himself.  Id. at 7-8.

12

On March 16, 2020, Plaintiff submitted grievance number SAC-C-20-01050, dated

13 March 8, 2020, in which he complained about his toilet and the leak in his cell.  ECF No. 23-4 at

14 5-8.  That grievance was granted at the first level of review on April 17, 2020, with a note that his

15 toilet had been fixed on March 10, 2020.  Id. at 12.  Plaintiff then appealed to the second level of

16 review on April 21, 2020, complaining that the leak had not been fully fixed and requesting that

17 Defendants Lelis and Tercero be reprimanded and disciplined.  Id. at 9, 17.  The second level of

18 review partially granted his appeal on May 26, 2020.  Id. at 17.  Specifically, Plaintiff's request to

19 address the leak, but it was denied as to his request to discipline Defendants Lelis and Tercero.

20 Id.  According to Plaintiff, on June 2, 2020, he submitted his appeal to the third level of review.

21 ECF No. 27 at 37.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1

## II.  THE PARTIES' EVIDENCE

2

**A.      Defendants' Evidence**

3

Defendants' motion for summary judgment is supported by the declaration of S.

4

Boxall, Appeals Coordinator at California State Prison, Sacramento, ECF No. 23-4, Howard E.

5

Moseley, Associate Director of the Office of the Appeals, ECF No. 23-5, and a Statement of

6

Undisputed Facts, ECF No. 23-3, contending the following facts are undisputed:

7

8          1.       Plaintiff Mark Anthony Brown (AP0910) is a prisoner in
the custody of the California Department of Corrections and
9          Rehabilitation (CDCR).  (Compl. 1, ECF No. 1.)  Plaintiff was housed at
California State Prison, Sacramento (CSP-Sacramento) at times material
to the matters at issue.  (Id.)

10

11         2.       At all times relevant to this action, Defendants Lelis and
Tercero were employed as correctional officers by CDCR at CSP-
Sacramento.  (Compl. 2, ECF No. 1.)

12

13         3.       On March 16, 2020, Plaintiff submitted inmate grievance
no. SAC-O-20-01050, dated March 8, 2020, alleging that his toilet was
turned off due to continuous flushing and that there was a leak in the
14         maintenance closet near his cell.  (Boxall Decl. Ex. B.)  The grievance was
initially rejected on March 20, 2020, because it contained multiple
15         unrelated issues.  (Id., Ex B.)

16         4.       Plaintiff resubmitted grievance no. SAC-O-20-01050 on
March 27, 2020, at which time it was accepted for review.  (Boxall Decl.
17         ¶¶ 10-11; Exs. A, B.)

18         5.       The grievance was granted at the first level of review in a
decision issued April 17, 2020.  (Boxall Decl. Ex. B.)  The first-level
19         decision noted that the toilet and water leak in the closet were repaired on
March 10, 2020.  (Id.)  The first-level decision also indicated that Plaintiff
20         was interviewed by the plumber at the front of his cell on April 6, 2020, at
which time Plaintiff confirmed the repairs were completed; however,
21         Plaintiff stated he did not wish to withdraw his grievance.  (Id.)

22         6.       Plaintiff appealed the decision to the second level of review
on April 24, 2020, stating that there continued to be issues with the leak
23         from the closet and water in his cell and requesting that Defendants Lelis
and Tercero be reprimanded.  (Boxall Decl. Ex. B.)

24

25         7.       In a decision issued May 26, 2020, Plaintiff's grievance
was partially granted at the second level of review.  (Boxall Decl. Ex. B.)
His request for toilet repair was granted; however, is request that
26         Defendants Tercero and Lelis be disciplined was denied.  (Id.)

27         8.       Plaintiff did not appeal grievance no. SAC-O-20-01050 to
the third and final level of review.  (Moseley Decl. Ex. A.)  Plaintiff has
28         never submitted an appeal to the third and final level of review alleging

3

that Defendants failed to provide cleaning supplies or accommodate a cell move when Plaintiff experienced cell flooding due to a water leak from an adjacent closet or maintenance issues with his toilet.  (Moseley Decl. ¶ 10.)

        9.      Plaintiff initiated this action on April 30, 2020.  (Compl. 1, ECF No. 1.)  At that time, his grievance was pending at the second level of review.  (Boxall Decl. ¶¶ 10-11, Ex. B.)

ECF No. 23-3.

## B.    **Plaintiff's Evidence**

In response to Defendant's Statement of Undisputed Facts, Plaintiff filed a Statement of Disputed Facts asserting genuine issues of disputed fact.  ECF No. 26 at 7.  In support of his opposition, he offers the following exhibits:

| | | |
|---|---|---|
| Exhibit A | Plaintiff's appeals, id. at 24. | |
| Exhibit B | Appeal receipt from third level, id. at 36. | |
| Exhibit C | New appeals process, id. at 42. | |
| Exhibit D | Appeal policy, emergency appeal rejection, id. at 46. | |
| Exhibit E | Plaintiff's declaration, id. at 50. | |
| Exhibit F | Appeal showing interview can be used to provide further clarification, id. at 53. | |
| Exhibit G | Office of appeals tracking system records, id. at 56. | |

Because Plaintiff is pro se, the Court "must consider as evidence in his opposition to summary judgment all of [the] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).  Therefore, the Court will also consider as evidence the factual assertions made in Plaintiff's complaint, which is verified.

/ / /

/ / /

/ / /

4

### III.  STANDARD FOR SUMMARY JUDGEMENT

1

2          The Federal Rules of Civil Procedure provide for summary judgment or summary

3  adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

4  together with affidavits, if any, show that there is no genuine issue as to any material fact and that

5  the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

6  standard for summary judgment and summary adjudication is the same.  <u>See</u> Fed. R. Civ. P.

7  56(a), 56(c); <u>see also</u> <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

8  the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  <u>See</u>

9  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

10  moving party

11
           . . . always bears the initial responsibility of informing the district court of
           the basis for its motion, and identifying those portions of "the pleadings,
12         depositions, answers to interrogatories, and admissions on file, together
           with the affidavits, if any," which it believes demonstrate the absence of a
13         genuine issue of material fact.

14         <u>Id.</u>, at 323 (quoting former Fed. R. Civ. P. 56(c)); <u>see also</u> Fed. R. Civ. P. 56(c)(1).

15         If the moving party meets its initial responsibility, the burden then shifts to the

16  opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

17  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

18  establish the existence of this factual dispute, the opposing party may not rely upon the

19  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

20  form of affidavits, and/or admissible discovery material, in support of its contention that the

21  dispute exists.  <u>See</u> Fed. R. Civ. P. 56(c)(1); <u>see also</u> <u>Matsushita</u>, 475 U.S. at 586 n.11.  The

22  opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

23  affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

24  242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th

25  Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

26  return a verdict for the nonmoving party, <u>Wool v. Tandem Computs., Inc.</u>, 818 F.2d 1433, 1436

27  (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

28  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

1  taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

2  'genuine issue for trial.'"   Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

3  claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

4  of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

5          In resolving the summary judgment motion, the Court examines the pleadings,

6  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

7  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

8  477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

9  court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

10  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

11  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

12  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

13  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

14  judge, not whether there is literally no evidence, but whether there is any upon which a jury could

15  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

16  imposed."  Anderson, 477 U.S. at 251.

17

18                                    **IV.  DISUCSSION**

19          Defendants contend that Plaintiff did not exhaust his available administrative

20  remedies because he filed this cause of action while his grievance was still pending at the second

21  level of review.  ECF No. 23-2 at 1.  The undersigned agrees and recommends granting

22  Defendants' motion.

23          The Prison Litigation Reform Act ("PLRA") requires prisoners seeking relief

24  under § 1983 to exhaust all available administrative remedies prior to commencing litigation.  See

25  42 U.S.C. § 1997e(a); Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017).  The Supreme Court

26  addressed the exhaustion requirement in Jones v. Block, 549 U.S. 199, 211 (2007), and

27  established three principles.  First, prisoners are not required to specially plead or demonstrate

28  exhaustion in the complaint because lack of exhaustion is an affirmative defense that defendants

6

1   must plead and prove.  Id. at 216.  Second, individuals named as defendants in a complaint do not

2   necessarily need to be named in the grievance process for exhaustion to be considered adequate

3   because the applicable procedural rules that a prisoner must follow are defined by the particular

4   grievance process, not by the PLRA.  Id. at 217-19.  Third, the PLRA does not require dismissal

5   of an entire complaint if some, but not all, claims are unexhausted.  Id. at 219-24.

6          The defendant bears the burden of showing non-exhaustion and if a defendant

7   meets his or her burden, the burden shifts to the plaintiff to show that the grievance process was

8   effectively unavailable.  See Albino v. Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014).  With that

9   in mind—there are no special circumstance exceptions to the exhaustion requirement.  Ross v.

10  Blake, 578 U.S. 632, 639-42 (2016).  The PLRA does not authorize courts to look to the

11  particulars of a case to determine if circumstances excuse a failure to exhaust.  See id.  A

12  plaintiff's chance to show that the administrative process was unavailable constitutes PLRA's

13  own, written exception.  See id. at 641-42.  The PLRA requires a plaintiff to exhaust available

14  administrative remedies but does not require the exhaustion of unavailable remedies.  Id.  Put

15  another way, inmates are obligated to exhaust only those grievance procedures "capable of use"

16  to obtain some relief for the conduct that the inmate challenges.  Id. at 643-44.  An administrative

17  remedy might be unavailable when procedures operate to a "dead end" and officials do not

18  actually provide relief, when an administrative scheme is so complex that inmates cannot use it,

19  or when officials simply thwart the grievance process.  Id.

20          The PLRA requires "proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93

21  (2007); Merchant v. Corizon Health, Inc., 993 F.3d 733, 742 (9th Cir. 2021).  Inmates must

22  comply with the deadlines and "critical procedural rules" of a prison's administrative relief

23  system.  Woodford, 548 U.S. at 91, 95; Merchant, 933 F.3d at 742.  This means that an inmate

24  must use all the steps that a prison employs in its grievance process, permitting the prison a

25  chance to reach the merits of the grievance and correct its own errors.  Woodford, 548 at 90-91,

26  94; see Fuqua v. Ryan, 890 F.3d 838, 844-45 (9th Cir. 2018); Reyes v. Smith, 810 F.3d 654, 657

27  (9th Cir. 2016).  When reviewing exhaustion under California prison regulations, which have

28  since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it

7

1    "puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp v.

2    Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010); see Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir.

3    2009).

4              Prior to June 1, 2020, California allowed inmates to administratively appeal "any

5    policy, decision, action, condition, or omission by the department or its staff that the inmate or

6    parolee can demonstrate as having a material adverse effect upon his or her health, safety, or

7    welfare." Cal. Code Regs., tit. 15, § 3084.1(a) (repealed 2020); see Munoz v. Cal. Dep't of

8    Corrs., No. CV 18-10264-CJC (KS), 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020).  The

9    California Department of Corrections and Rehabilitation ("CDCR") used to have a three-step

10   process for grievances, but now has a two-step process. Id.; see Cal. Code Regs., tit. 15, §§ 3480-

11   87.

12             Broadly described, under the former three-step process, a prisoner had to submit a

13   grievance to the appeals coordinator of the prison where his or her claim arose. Munoz, 2020 WL

14   519917, at *6.  If the inmate did not receive relief at the first level, he or she had to submit a

15   second level appeal. Id.  If the inmate did not receive adequate relief at the second level, he or

16   she had to submit a third level appeal to the Office of Appeals. Id.  If the Office of Appeals

17   reached a decision at the third level of review, the administrative remedies would be considered

18   properly exhausted. Id.; see Reyes, 810 F.3d at 657.

19             Plaintiff argues that he exhausted his remedies because current regulations only

20   require two levels of review. ECF No. 26 at 5, 8.  Not so.  The current regulations that require

21   two levels of review were not implemented until June 1, 2020, after Plaintiff filed his grievance in

22   March 2020.  Thus, Plaintiff's grievance was subject to the regulations in place at the time, which

23   required three levels of review. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(d)(3) (repealed

24   June 1, 2020).  In addition, he filed this action on April 30, which was before the second level of

25   review was completed on May 26.  Complete exhaustion of administrative remedies must occur

26   before a plaintiff may file suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  Thus,

27   Plaintiff did not exhaust his administrative remedies prior to filing this action.

28             The undisputed facts establish that Plaintiff has not exhaust his administrative

1    remedies prior to commencing this action.  Plaintiff filed this action on April 30, 2020; he did not

2    receive a second-level response to his grievance until May 26, 2020.  Because Plaintiff's appeal

3    was still pending at the second level of review when he filed this action, he did not exhaust his

4    administrative remedies.

5              Plaintiff also argues that his appeal should have been considered an emergency

6    appeal because it dealt with a serious and imminent threat to his health and safety, and as an

7    emergency appeal, it should have been completed in five days.  ECF No. 26 at 16.  Because it was

8    not completed in five days, he argues that his administrative remedies were not available.  Id.

9    That argument is unpersuasive.  First, his grievance was denied as an emergency appeal on March

10   16, 2020.  ECF No. 26 at 47.  Second, there is no "imminent danger" exception to the PLRA's

11   exhaustion requirement.  *Freeman v. Foss*, No. 19-CV-02594-HSG, 2020 WL 6270938, at *2

12   (N.D. Cal. Oct. 26, 2020).

13             Because the undisputed evidence shows that Plaintiff failed to exhaust

14   administrative remedies prior to filing suit, Defendants' motion for summary judgment should be

15   granted.

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

1

## V.  CONCLUSION

2          Based on the foregoing, the undersigned recommends that Defendants' motion for

3    summary judgment, ECF No. 23, be granted.[1]

4          These findings and recommendations are submitted to the United States District

5    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days

6    after being served with these findings and recommendations, any party may file written

7    objections with the court.  Responses to the objections shall be filed within 14 days after service

8    of objections.  Failure to file objections within the specified time may waive the right to appeal.

9    See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11          Dated:  January 24, 2022

12                                                    _____
                                                      DENNIS M. COTA
13                                                    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27
_____
28    [1] In light of this findings and recommendations, Plaintiff's motion for adjudication is
      denied as moot.  ECF No. 32.